## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**UNITED STATES OF AMERICA**,

v.

**GILBERTO BERMUDA**,

Defendant.

Criminal No. 13-035 (CCC/BJM)

## REPORT AND RECOMMENDATION

Defendant Gilberto Bermuda ("Bermuda") is charged with one count of violating 18 U.S.C. § 1542, willfully and knowingly making a false statement in a passport application; and one count of violating 42 U.S.C § 408(a)(8), using or disclosing a person's social security number in violation of United States law. Docket No. 14. Bermuda moved to dismiss the indictment with prejudice for violation of the Speedy Trial Act of 1974 ("STA" or "Act"), 18 U.S.C. § 311 *et seq.*, and his constitutional right to a speedy trial, U.S. Const. amend. VI. Docket No. 64. The United States opposed. Docket No. 66. The presiding district judge referred the matter to me for report and recommendation. Docket No. 69. After the referral, Bermuda filed a supplemental motion to dismiss the indictment on STA grounds, Docket No. 70, which stands unopposed. For the reasons that follow, the indictment should be **dismissed without prejudice**.

### PROCEDURAL BACKGROUND

Bermuda was indicted on January 23, 2013, and arraigned on January 28, pleading not guilty to both counts. Docket Nos. 14, 16. On February 7, before a date had been set for trial, the government filed an informative motion that it had begun to make discovery materials available. The court noted the government's disclosure, as the motion requested, on March 4. Docket. No. 20.

The court issued a scheduling order on March 6, setting trial for May 23. Docket No. 19. In the order, the court set April 12 as the deadline for pretrial motions, expressly finding that the benefit to Bermuda in having enough time to prepare pretrial motions

outweighed his and the public's interest in a speedy trial.  *Id.*  The order also informed the parties of their discovery obligations and provided that discovery motions were disallowed except in cases where disclosure had been refused.  *Id.*  April 12 passed without the submission of any pretrial motion by either party.

On May 1, the government moved to continue the trial, since the prosecutor handling the case had another trial around the same time.  Docket No. 21.  Bermuda also moved for a continuance, citing delays he had experienced in obtaining documents important to his defense from the Social Security Administration ("SSA").  Docket No. 22.  On May 15, the court granted both motions and vacated the original trial date, primarily on the grounds put forward by Bermuda, and reset trial for July 22.  Docket No. 23.  Its order provided that the period until July 1 would be excluded from calculation for speedy trial purposes because Bermuda's interest in reviewing the SSA documents outweighed his interest, and the public's, in a speedy trial.  *Id.*

The government filed a second informative motion as to the availability of discovery on June 25, which the court noted on July 3, Docket Nos. 25, 26, and a third, which the court noted on July 10.  Docket Nos. 27, 28.  On July 13, the government submitted an ex parte motion in limine ("first ex parte motion") seeking an order as to its disclosure responsibilities under *Giglio v. United States*, 405 U.S. 150 (1972),  Docket No. 30,  together with a motion to restrict access.  Docket No. 29.

On July 17, Bermuda moved, unopposed by the government, to reset the trial date, because counsel for both the defense and the prosecution were engaged in a separate trial and because defense counsel needed more time to review discovery the government had recently provided.  Docket No. 31.  On July 19, the government filed two ex parte motions ("second and third ex parte motions"), along with two motions to restrict, requesting aid from the court in compelling the production of documents from non-parties.  Docket Nos. 32, 34–36. Also on July 19, the court granted Bermuda's motion to reset and vacated the scheduled trial. Docket No. 37.  By separate order on July 31, the court reset the trial for October 4.  Docket

No. 38.  The July 31 order also provided that Bermuda would be allowed 45 days from the end of his attorney's concurrent trial to examine the new discovery materials.  *Id.*

The court issued an ex parte sealed order on August 26, as requested by the government's third ex parte motion.  Docket No. 39.  On August 29, the court vacated the October 4 trial and reset it for October 18.  Docket No. 40.  Over a month later, on October 7, the court granted the motions to restrict the government's second and third ex parte motions, and the next day granted the motion to restrict the first ex parte motion.  Docket Nos. 41, 42.  A day later, on October 9, the court granted the government's second ex parte motion and ruled on the first, ordering disclosure to Bermuda of particular information about a government witness.  Docket Nos. 43, 44.

On October 11, a week before trial was set to begin, Bermuda again moved to continue the trial, Docket No. 45, as defense counsel was involved in another conflicting trial and also required more time to process newly received discovery.  The court granted the motion the same day, noting that Bermuda's need to prepare for trial outweighed his and the public's interest in a speedy trial.  Docket No. 46.  The court did not reset the trial, but instead scheduled a status conference for December 4.  *Id.*

At the December 4 status conference, Bermuda's counsel informed the court of her intent to exclude evidence of a prior conviction, and the court set January 15, 2014, as a deadline for a motion in limine by the defense, as well as for any defense motion regarding access to government witnesses.  Docket No. 47.  The court also ordered the government to submit by the same date an informative motion stating whether it had complied with the disclosure order the court had issued on October 9; the government complied, filing an ex parte motion on December 12, along with a motion to restrict.  Docket Nos. 49 ("fourth ex parte motion"), 50.

On December 13, Bermuda moved to reopen his bail hearing.  Docket No. 51.  The government opposed on December 31, one day after responses were due.  Docket No. 52.  The court referred that matter to me for disposition on January 17, 2014.  Docket No. 57.  In

the same order, the court noted the government's fourth ex parte motion and granted the motion to restrict it. *Id.* On January 21, I denied the motion to reopen Bermuda's bail hearing. Docket No. 59.

Meanwhile, on January 14, 2014, the government filed its designation of evidence, and on January 15, Bermuda filed a motion in limine seeking to preclude at trial certain evidence of his criminal history. Docket Nos. 53, 54. The court noted the government's designation of evidence on January 17 and set January 31 as the deadline for any additional defense motions to suppress. Docket No. 55. In a separate order issued the same day, the court instructed the government to respond to Bermuda's motion in limine by February 4. Docket No. 56. The government failed to do so, and on February 13, the court sua sponte granted an extension for compliance. Docket No. 60. The government responded on March 7, the final day of the extension. Docket No. 61. After considering the papers before it, the court decided that it needed further information and on April 14 ordered the government to submit, by May 9, further evidence that Bermuda's prior murder conviction should be admitted under Federal Rule of Evidence 404(b). Docket No. 62. The government complied with that order on May 9, submitting further materials. Docket No. 63.

On May 30, Bermuda moved to dismiss his indictment on speedy trial grounds, and the government opposed on June 16. Docket Nos. 64 ("Mot."), 66 ("Opp."). The matter was referred to me on July 30. Docket No. 69. Bermuda filed a supplemental motion to dismiss his indictment on August 8, arguing that, even if his speedy trial rights were not violated prior to his initial motion to dismiss, the delay in resolving that motion provided a separate reason for dismissal. Docket No. 70 ("Supp. Mot."). The government has not responded to that motion.

## DISCUSSION

### I.      Speedy Trial Act

The STA generally requires that a defendant who has plead not guilty be tried within

70 days of indictment or his first appearance before a judicial officer, whichever is later. 18 U.S.C. § 3161(c)(1); *United States v. Rodriguez*, 63 F.3d 1159, 1162 (1st Cir. 1995). Not every day that passes, however, counts toward the Act's 70-day limit; several types of delays between indictment or appearance and trial are excluded from the computation of elapsed time. *See* § 3161(h). The Act excludes delays that stem from "other proceedings concerning the defendant," a category that includes, among others, "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion," § 3161(h)(1)(D); and "delay reasonably attributable to any period, not to exceed 30 days, during which any proceeding concerning the defendant is actually under advisement by the court." § 3161(h)(1)(H).

Subsections (D) and (H) are to be read together, creating a scheme that distinguishes between pretrial motions decided with and without a hearing. *See Henderson v. United States*, 476 U.S. 321, 328–331 (1986); *Rodriguez*, 63 F.3d at 1163. For pretrial motions requiring a hearing, the entire period from the filing of the motion to the date of the hearing is excluded, along with up to 30 days after the hearing and before the ruling while the motion is "under advisement." *See Henderson*, 476 U.S. at 328–31; *United States v. Barnes*, 159 F.3d 4, 11 (1st Cir. 1998). A motion is considered "under advisement" when the court has received "all of the papers and arguments it reasonably expects." *Henderson*, 476 U.S. at 336. Pretrial motions that do not require a hearing, decided on papers alone, give rise to an exclusion beginning at the filing of the motion and extending until the court has before it all reasonably expected papers, plus up to 30 days of advisement time. *See Rodriguez*, 63 F.3d at 1163. For all pretrial motions, the excluded period includes both the day of the initial filing and the day on which the court makes its ruling. *See United States v. Papaleo*, 853 F.2d 16, 21 (1st Cir. 1988).

Also excluded from computation is "[a]ny period of delay resulting from a continuance . . . if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the

defendant in a speedy trial." § 3161(h)(7)(A).  The exclusion applies only if the court puts on the record, by the time it rules on the defendant's motion to dismiss, its reasons for these "ends of justice" findings.  *See id.*; *Zedner v. United States*, 547 U.S. 489,  506–07 (2006); *United States v. Valdivia*, 680 F.3d 33, 39 (1st Cir. 2012).

If the STA's 70-day mandate is violated, the remedy, upon the defendant's motion, is dismissal of the indictment.  *See* 18 U.S.C. § 3162(a)(2).  The court has no choice in whether to dismiss but retains a measure of discretion: the dismissal may be with or without prejudice.  *See id.*; *United States v. Hastings*, 847 F.2d 920, 924 (1st Cir. 1988).

### A.        First Motion to Dismiss

The court follows a two-step process in evaluating a motion to dismiss under the STA.  *See United States v. Staula*, 80 F.3d 596, 600 (1st Cir. 1996).  First, it must calculate the total number of days that have elapsed, and then it must determine how many days should be excluded for STA purposes.  *See id.*  To use a metaphor commonly applied in STA cases, *see Rodriguez*, 63 F.3d at 1162, the clock here began to tick on January 28, 2013, the day of Bermuda's arraignment, and stopped on May 30, 2014, when Bermuda moved to dismiss his indictment for the first time.  *See United States v. Connor*, 926 F.2d 81, 84 (1st Cir. 1991) ("[A] motion for dismissal is effective only for periods of time which antedate the filing of the motion.").  The date of arraignment is not itself included in the 70-day period contemplated by the Act.  *See Rodriguez*, 63 F.3d at 1163 n.1; *United States v. Jodoin*, 672 F.2d 232, 237 n.7 (1st Cir. 1982), *abrogated on other grounds by Bloate v. United States*, 559 U.S. 196 (2010).  Nor is the date of the motion.  *See Connor*, 926 F.2d at 84; *Papaleo*, 853 F.2d at 21. Before involving any controversial § 3161(h) exclusions, then, 486 days passed from (but not including) arraignment to (but not including) the motion.

The next step is to reduce that figure by pulling out periods made excludable by the Act.  There are a few that the parties agree are excludable: the periods from March 6, 2013, through April 12, 2013 (38 days); from May 1, 2013, through July 1, 2013 (32 days); from

July 13, 2013, through September 8, 2013 (58 days); from October 11, 2013, through February 17, 2014 (130 days); March 7, 2014 (one day); and from April 14, 2014, through May 29, 2014 (46 days)[1].  All told, the parties agree that 305 days are excludable, leaving 181 days that remain contested.  Of those, the government concedes that 26 are non-excludable.[2]  The question is therefore whether there are at least 45 more, to bring the total number of non-excludable days over 70.  There are, and more.

First in time among the disputed periods is the stretch from February 7, 2013, through March 4, 2013 (26 days).  *See* Mot. 10; Opp. 3.  On February 7, the government filed an "informative motion" notifying the court and Bermuda that it had made discovery materials available.  Docket No. 17.  In the motion, the government requested that the court take notice of the submittal, *see id.*, and the court did so in an order on March 4.  Docket No. 20.  The government treats this period in its papers as a "delay resulting from any pretrial motion," § 3161(h)(1)(D), and so excludes it from calculation of the Act's 70-day limit.  *See* Docket No. 66.  The issue, then, is whether the February 7 informative motion should be treated as a "pretrial motion" for STA purposes.

The Act does not, on its face, distinguish between different classes of motions; it excludes delays from "*any* pretrial motion."  *Id.* (emphasis added).  For this reason, the First Circuit has "read the term 'pretrial motion' broadly to encompass all manner of motions, ranging from informal requests for laboratory reports to 'implied' requests for a new trial

---

[1] The government actually treats 20 days (May 10 through May 29) from this last period as *non-*excludable.  Opp. 4.  Because Bermuda admits that all 46 days are excludable, Mot. 10, and because in fact they are, as will be discussed below, I include them among the uncontested excludable days.

[2] In its motion in opposition to Bermuda's motion to dismiss, the government calculates 66 non-excludable days.  Opp. 5.  I amend this calculation for several reasons.  First, the government's timeline fails to mention March 5, 2013, *see* Opp. 3, and there is no reasonable argument to exclude that day.  Second, the government repeatedly undercounts periods it acknowledges as non-excludable by one day, failing to include in the count both the first and last days of the periods.  *See* Opp. 3–4.  The result is three additional days, bringing the government's real count to 70.  However, the government also includes in its calculation a total of 44 days (comprising the 20 days discussed in note 1, *supra*, and the 24-day period from March 8, 2014, through March 31, 2014) that I find to be in fact excludable.  I therefore do not include them here, leaving 26 days that no one disputes are non-excludable.

date." *Barnes*, 159 F.3d at 11; *see United States v. Santiago-Becerril*, 130 F.3d 11, 17 (1st Cir. 1997) (treating counsel's notifying the court of his renewed availability after a continuance as an implied motion for a new trial date); *United States v. Jorge*, 865 F.2d 6, 11 (1st Cir. 1989) (holding that the government's "request for discovery" was sufficiently analogous to a motion to be considered at least an "other proceeding" subject to exclusion). The *Barnes* court held that a motion requesting that a status conference be scheduled qualified as a "pretrial motion" for purposes of § 3161(h)(1)(D).  *See* 159 F.3d at 11.  In *United States v. Richardson*, 421 F.3d 17, 27–29 (1st Cir. 2005), the court treated as a "pretrial motion" a filing by the government that notified the court of the time remaining under the STA and requesting a continuance, even though the defendant characterized it as a mere "status report."

But the First Circuit has also declined to treat some filings as pretrial motions.  In *United States v. Rush*, 738 F.2d 497, 505 (1st Cir. 1984), the court held that "an offer of proof is not a pretrial motion within the meaning of [§ 3161(h)(1)(D)].  Instead, it is a submission of evidence which need not be admitted or excluded until trial."  The court reasoned that if "such submissions were held to be pretrial motions or 'other proceedings concerning the defendant' triggering automatic exclusions under (h)(1), the [STA] could easily be circumvented by filing offers of proof at an early stage and then failing to press for prompt disposition.  This was not the intent of Congress."  *Id.*  at 505–06.

*United States v. Rojo-Alvarez*, 944 F.2d 959 (1st Cir. 1991), addressed a more complex issue.  There, the trial court reserved ruling on a government motion in limine until trial.  *Id.* at 965. The *Rojo-Alvarez* court rejected the defendant's argument that *Rush* categorically foreclosed exclusions resulting from motions in limine, but nonetheless recognized that the motion at issue should not be given the full exclusionary effect of a "pretrial motion" under § 3161(h)(1)(D), with the entire period from filing to resolution at trial subject to exclusion. *See id.*  The court was guided in its reasoning by the Supreme Court's statement that "[t]he provisions of the Act are designed to exclude all time that is

consumed in placing the trial court in a position to *dispose* of a motion." *Id.* at 966 (emphasis in original) (quoting *Henderson*, 476 U.S. at 331). Once the court decided to reserve ruling on the motion until trial, there could be no pretrial disposition, and so the period from that decision until trial is non-excludable. *See id.* But when the papers at issue are "*styled* as a motion," the court is entitled to exclude the period in which it considers how to handle the filing—that is, whether the filing will be subject to pretrial disposition or instead treated like the offer of proof in *Rush*. *See id.* (emphasis in original).

Here, the government's February 7, 2013, "informative motion" should not be treated as a "pretrial motion," and its filing therefore did not generate any excludable time. It is true that the First Circuit has construed "pretrial motion" broadly. *See Barnes*, 159 F.3d at 11. But in all the cases where questionable papers were ultimately treated as pretrial motions, those papers sought some meaningful pretrial action beyond the mere acknowledgement of submittal. In *Barnes*, the government requested that the court set a status conference, *see id.*; in *Santiago-Becerril*, the defendant (impliedly) requested that the court set a new trial date, *see* 130 F.3d at 17; in *Jorge*, the government requested that the defendant turn over a forensic report. S*ee* 865 F.2d at 11. The court in *Richardson* emphasized that the motion in question was more than simply a status report: it "also sought relief in the form of a continuance." 421 F.3d at 29.

Here, the government's informative motion did not seek relief; it requested only that the court take notice of the fact that the government had informed Bermuda that discovery was "available for pick up." Docket No. 17. Like the offer of proof in *Rush*, *see* 738 F.2d at 505–06, the court was not required to take any action on it before trial—indeed, the court *could not* act upon it in any meaningful way. *Rojo-Alvarez* stressed that the STA's exclusions are intended to give courts breathing room while they "dispose" of pretrial motions before them, *see* 944 F.2d at 966, but there could be no real disposition here. It would be meaningless to speak of the court's granting or denying what was nothing more than a notice. *Cf. Rush*, 738 F.2d at 506 ("The district court did not treat the proffer as a

pretrial motion for purposes of [§3161(h)(1)(D)], and we see no reason to do so.").

The February 7, 2013, informative motion therefore did not give rise to any excludable period, and the 26-day period from (and including) that date through March 4, when the court noted the motion, must be counted toward the 70-day limit.  Having started with 26 uncontested non-excludable days, this addition pushes the delay in trial to 52 days. Given the malleability of the definition of "pretrial motion," I note that my recommendation does not depend on finding this period to be non-excludable.

The government also treats as excludable the period from April 13, 2013, to April 30, 2013 (18 days); Bermuda, unsurprisingly, argues that it is non-excludable.  *See* Opp. 3; Mot. 10.  Bermuda is correct.  In its March 6 scheduling order, the court granted a continuance through April 12 for the purpose of pretrial motion preparation.  *See* Docket No. 19.  The court found in the order that Bermuda's interest in preparing pretrial motions outweighed his and the general interest in a speedy trial, as required for the period of the continuance to be excluded under § 3161(h)(7)(A).  *See Zedner*, 547 U.S. at 506–07; *see also Bloate*, 559 U.S. at 206–14 (2010) (holding that, while time for the preparation of pretrial motions is not automatically excludable, it may be excluded if granted as a continuance supported by the required findings).  The government apparently contends, *see* Opp. 3, that this continuance extended at least until May 13, when Bermuda moved to continue the trial. Docket No. 22.  While the First Circuit has held that open-ended continuances are permissible, *see United States v. Balsam*, 203 F.3d 72, 80 (1st Cir. 2000); *Santiago Becerril*, 130 F.3d at 18; *Rush*, 738 F.2d at 508, they are not the norm, and the length of a continuance may be limited by its own terms.  In fact, it is "generally preferable to limit a continuance to a definite period for the sake of clarity and certainty."  *Rush*, 738 F.2d at 508.

Here, the continuance granted by the court's March 6 scheduling order, expressly for purposes of pretrial motion preparation, was clearly limited to the period ending on April 12, which the order set as the deadline for any pretrial motions.  *See* Docket No. 19.  The continuance ended, as contemplated by the scheduling order, on April 12; the clock resumed

ticking the following day and did not stop again until May 1, when the government again moved to continue the trial. Docket No. 21. The 18-day period from (and including) April 13 to (and including) April 30 is therefore non-excludable.[3] Considered in tandem with the 26 days previously discussed, this period brings the tally of non-excludable days to 44, not including those already conceded by the government; with those 26 included as well, the count stands at 70 days, the maximum number permitted by the STA.

The next disputed period runs from July 2, 2013, through July 12, 2013 (11 days). *See* Mot. 10–11; Opp. 3. Bermuda is correct in arguing that this time is non-excludable. On May 15, the court granted both the government's and Bermuda's motions to continue trial, primarily to give Bermuda time to obtain and review documents he had requested, without success, from the SSA. *See* Docket No. 23. Though the court reset trial for July 22, it expressly allowed Bermuda only until July 1 to deal with these materials and made, for the interim period, the "ends of justice" findings required by § 3161(h)(7)(A). *See id.* The clock that had stopped because of the continuance therefore started again on July 2. The government filed its first ex parte motion on July 13, which, the parties agree, operated to suspend the speedy trial clock again. Docket No. 30. From the day after the continuance ended until the day before the first ex parte motion, there were 11 non-excludable days,[4] bringing the tally to 55 without considering those the government concedes, and to 81 including the conceded days.

Before and during this period the government also filed two informative motions, on June 25 and July 8. Docket Nos. 25, 27. The court took notice of the first on July 3 and the second on July 10. As discussed, these informative motions did not create any excludable delays. Even if they did, only five of the 11 days are excludable: July 2 and July 3, when the first ex parte motion was noted; and July 8 through July 10, from filing until disposition of

---

[3] Bermuda calculates this period as comprising 17 days. Mot. 10. He has presumably neglected to count either the first or last day.
[4] Bermuda calculates a ten-day period. Mot. 10–11.

United States v. Bermuda, Criminal No. 13-035 (CCC/BJM)                                              12

the second.

The period from September 9, 2013, through October 4, 2013 (26 days), is also contested.  *See* Mot. 11; Opp. 3.  The dispute centers on the effect of the court's July 31 order resetting trial for October 4 and allowing Bermuda 45 days after the end of a separate trial, in which his counsel was involved, to examine newly produced discovery materials. Docket No. 38.  The parties agree that the consequent excludable period extends at least through the 45th day after the other trial's conclusion; the government would stretch it through October 4, the new trial date.

While the order is not as explicit as others in this case, it seems clear that the court intended to exclude only the 45 days after the end of the coincident trial; if the continuance were meant to reach until the new trial date, there would be no reason to set aside a separate 45-day term.  The other trial ended on July 24, making September 7 the last day of the 45-day continuance.  Because that day was a Saturday, the excludable period was extended through September 9, and September 10 marked the first day of a new non-excludable term. *See* Fed. R. Crim. P. 45(a)(1)(C).  The government's first, second, and third ex parte motions were pending at that time, along with their accompanying motions to restrict.  Docket Nos. 29, 30, 32, 34–36.  The last of these, however, was filed on July 19, and none required a hearing; for each, the 30-day excludable period for prompt disposition had expired well before September 10.  The 25 days from September 10 through October 4 are therefore non-excludable, bringing the tally to 80, not including the 26 days the government concedes may not be excluded.  With those 26 days included, the count is 106 non-excludable days.

The government would also exclude October 7 through October 9 as days on which the court issued orders.  Opp. 4; *see* Docket Nos. 41–44.  This is the correct approach: the day of an order deciding a motion is automatically excludable. See *Papaleo*, 853 F.2d at 21. The tally thus holds fast at 80 days, not including the 26 acknowledged by the government to be non-excludable, and at 106 days with those included.

There is significant disagreement as to the handling of the period beginning with

Bermuda's January 15, 2014, motion in limine, Docket No. 54, on which there was no hearing. *See* Mot. 9–11; Opp. 4. To recap the relevant procedural facts about this period: the court ordered the government to respond by February 4,[5] Docket No. 56, but the government did not comply. On February 13, the court again ordered the government to respond and granted an extension until March 7, Docket No. 60, when the government in fact responded. Docket No. 61. Over a month later, on April 14, the court ordered the government to submit further materials by May 9 and set May 30 as the deadline for Bermuda to state his final position on the evidence at issue. Docket No. 62. The government complied on May 9, Docket No. 63, and on May 30, in lieu of stating his final position, Bermuda moved to dismiss the indictment. Mot.

Normally, the time from the filing of a motion to the filing of its opposition is excluded; it is not until the court has the response before it that the motion is "under advisement." The 30-day excludable advisement period then begins. This standard procedure is complicated, however, when, as here, the opposing party fails to respond by a court-ordered deadline. Some circuits have handled this scenario by beginning the advisement period on the deadline, not when the response is actually made. *See United States v. Bryant*, 523 F.3d 349, 359–60 (D.C. Cir. 2008) ("[O]nce Walker's counsel failed to file a timely response on or before October 28, 2005, the [motion] was 'under advisement.'"); *United States v. Thomas*, 788 F.2d 1250, 1259–60 (7th Cir. 1986) ("[T]he motion must be deemed 'under advisement' as soon as the prosecutor's response was due, no matter when the prosecutor filed."). However, the First Circuit has explicitly left the question open, though it discussed *Thomas* with approval. *See Rodriguez*, 63 F.3d at 1165–66.

Here, resolution of this issue further must account for the court's sua sponte order, issued February 13 (nine days after the original deadline), granting the government an

---

[5] Bermuda incorrectly states that the government's response was due on February 7, 2014. Mot. 9.

extension until March 7.  Docket No. 60.  As Bermuda points out, this extension was not accompanied by the "ends of justice" findings necessary for a continuance to be excludable under § 3161(h)(7)(A).  *See* Mot. 11.  (However, the court may retroactively put such findings on the record before ruling on Bermuda's motion to dismiss, *see Huete-Sandoval*, 668 F.3d at 3, assuming it was the court's intent to create an excludable period.)

Bermuda extols the virtues of the "due date" rule but does not apply it.  He argues instead that the advisement period was triggered, as usual, by the government's actual response, but that the time (31 days) between the original deadline  and that response is non-excludable.[6]  Mot. 9, 11.  The government argues, on the other hand, that the time from the motion to its actual response is excludable, but that no excludable advisement period followed.  Opp. 4.  There is no support at all for the government's position, which would not include *any* period for advisement, and why the government would advance that position is a mystery.  Neither, however, is Bermuda's approach wholly satisfactory.

I find that application of the "due date" rule is appropriate given the objectives of the Act.  As the First Circuit has noted, the rule is "commended by fairly obvious considerations of policy."  *Rodriguez*, 63 F.3d at 1166; *see Thomas*, 788 F.2d at 1259 ("If the entire period [of delay attributable to a government's late filing] were excluded, a prosecutor could obtain indefinite exclusions of time by the expedient of not responding to . . . motions.  That would undercut the structure of the [STA].").  This district court has also suggested that this approach is appropriate.  *See United States v. Morales-Rivera*, 203 F. Supp. 2d 92, 98 (D.P.R. 2002) ("Although the Government did not, ultimately, file a response to the motion, there is no indication in the record that the Court could have known this until the response deadline passed.  Consequently, the Court could not have taken the motion under advisement until . . . the day after the Government's response was due.").

---

[6] In fact, Bermuda, "[e]xercising an abundance of caution," suggests that the court could have let the government's tardiness slide for 10 days, and would therefore reduce the non-excludable period by 10 days.  Mot. 9.  I see no reason to conjure up after the fact an extension of arbitrary length and will base my calculations on the dates in the record.

Accordingly, here the advisement period began on February 5, the day after the original deadline. However, the court interrupted this period on February 13, after eight days had passed, in its order granting the government an extension. Docket No. 60. This extension, I conclude, was intended to prolong the excludable period by 23 days—from the date of the order until the amended deadline—in the interests of justice. *See* § 3161(h)(7)(A) (providing that a court may grant an excludable continuance sua sponte); *United States v. Oberoi*, 547 F.3d 436, 456 (2d Cir. 2008), *judgment vacated on other grounds*, 559 U.S. 999 (2010) (finding that a magistrate judge extended the advisement period for a pretrial motion in the interests of justice under § 3161(h)(7)(A)); *Rush*, 738 F.2d at 505 (holding that the advisement period exclusion may be extended by an "ends of justice" continuance).

The extension did not, though, likely operate to wipe clean the eight advisement days that had already passed, because the court cannot grant continuances retroactively. *See Rush*, 738 F.2d at 507 (citing *United States v. Janik*, 723 F.2d 537, 545 (7th Cir. 1983); *Jodoin*, 672 F.2d at 237; *United States v. Brooks*, 697 F.2d 517, 522 (3d Cir. 1982)) (noting that the First Circuit has not addressed whether continuances may be granted retroactively but stating that other circuits have so held)). After the government responded, therefore, 22 excludable advisement days remained, with the advisement period naturally ending on March 29. Since that day was a Saturday, March 30 and 31 are also excludable. *See* Fed. R. Crim. P. 45(a)(1)(C).

No further action was taken until April 14, when the court ordered the government to submit by May 9 further materials required for a ruling. Docket No. 62. The court also stated that Bermuda would be allowed until May 30 to state his final position on the admissibility of the evidence at issue. *Id.* As I will discuss, the April 14 order triggered an excludable continuance lasting through May 30, when Bermuda moved to dismiss. The next question, then, is how to treat the 13 days from April 1 (the day after the end of the advisement period) through April 13 (the day before the order).

As a starting point, the government has conceded that this 13-day period is non-

excludable,  Opp. 4, and I have included it in calculating the 26 days that the government does not contest are non-excludable.  I nevertheless consider this period independently because, due to the peculiar circumstances of this case, it is possible that the government is wrong.[7]  Arguably, the entire period from April 1 (the day after the end of the advisement period) through May 30 (when Bermuda's final response to the government's supplemental filings was due) should be excludable as time before Bermuda's motion in limine was actually under advisement. The government, in its response on March 7, indicated for the first time that it intended to use certain evidence for substantive, rather than impeachment, purposes.  *See* Docket No. 62.  Barring an express statement by the court to the contrary, a matter is "under advisement" for STA purposes only once the court receives "all of the papers and arguments it reasonably expects."  *Henderson*, 476 U.S. at 336.  Here, the court reasonably expected to have all it needed to make an informed ruling by March 7, and the government's new arguments frustrated that expectation. On this view, the motion was not under advisement until the court heard Bermuda's final position on the matter, which it never did; Bermuda moved to dismiss the indictment instead of responding to the government's May 9 submission.  *See* Mot.

In *Scott*, the First Circuit held that a court could not decline to decide a motion "and then retroactively seek to explain the lack of prompt disposition by saying it needed additional filings, although it had taken the matter under advisement earlier." 270 F.3d at 57; *see also Janik*, 723 F.2d at 543–44.  Once the court took a motion under advisement, the STA precluded it from justifying a delay over 30 days by claiming that the advisement period had never actually begun.  *See Scott*, 270 F.3d at 54–57.  The court in *Scott*, however, explicitly designated the matter as under advisement, which the court here never did.  *See id.*

The question is therefore whether Bermuda's motion in limine was at any point actually under advisement.  The "due date" rule automatically treats a motion as under

---

[7] Bermuda does not reach the same conclusion as the government, instead treating as excludable the period from April 1 through April 6.  Mot. 9.

advisement on the date of the opposition deadline, but that rule may not take into account a situation like the one here, where the court is blindsided by unexpected arguments requiring further filings. Nevertheless, because the STA generally "sets bright-line rules," *United States v. Hood*, 469 F.3d 7, 10 (1st Cir. 2006), I conclude that a motion's advisement period begins when its response is due, despite an unforeseen need for further filings. In such a situation, the court may, as here, generate additional excludable time by granting a continuance under § 3161(h)(7)(A).

The motion was thus under advisement and so precipitated a finite advisement period. But the court's April 14 order served to grant a continuance until the court expected to have all papers it needed, assuming that the court makes the requisite "ends of justice" findings by the time it rules on this motion. *See Huete-Sandoval*, 668 F.3d at 3. The continuance made excludable the period from the order through May 30, the last day for Bermuda to state his final position (and also, as it happened, the date of this motion). Because the continuance probably would operate only prospectively, *see Rush*, 738 F.2d at 507 (citing *Janik*, 723 F.2d at 545; *Jodoin*, 672 F.2d at 237; *Brooks*, 697 F.2d at 522)), the 13-day period from April 1 (the day after the end of the advisement period) through April 13 (the day before the order) would be non-excludable. The government conceded this much, though based on different reasoning. *See* Opp. 4. The tally remains at 80 days not including those conceded; including them, the total is 106 non-excludable days.

The following table summarizes the days that must be counted toward the Act's 70-day limit:

*Conceded by the government*

| | |
|---|---|
| January 9, 2013, through February 6, 2013........................ | 9 days |
| March 5, 2013................................................................. | 1 day |
| October 5, 2013, through October 6, 2013......................... | 2 days |
| October 10, 2013............................................................. | 1 day |
| April 1, 2014, through April 13, 2014................................ | 13 days |
| | 26 days |

United States v. Bermuda, Criminal No. 13-035 (CCC/BJM)                                    18

*Not conceded by the government*

|                                                                      |          |
|----------------------------------------------------------------------|----------|
| February 7, 2013, through March 4, 2013............................ | 26 days  |
| April 13, 2013, through April 30, 2013.............................. | 18 days  |
| July 2, 2013, through July 12, 2013.................................. | 11 days  |
| September 10, 2013, through October 9, 2013.................. | 25 days  |

80 days

**106 days**

### B.    Supplemental Motion to Dismiss

Bermuda argues that even if the government were correct in its calculation of non-excludable days predating his initial motion to dismiss, the STA was violated by further delay pending resolution of that motion.  Supp. Mot. 2.  He is correct.

Generally, the STA is concerned only with the events before a defendant's motion to dismiss on speedy trial grounds, and "[s]ubsequent periods of delay, whether includable or excludable, are inconsequential."  *Connor*, 926 F.2d at 84.  But this is not the case when the defendant moves to dismiss under the STA again: "The right to challenge any subsequent delay is waived *absent the bringing of a new motion to dismiss*."  *Id.* (quoting *United States v. Wirsing*, 867 F.2d 1227, 1230 (9th Cir. 1989) (emphasis added).  That is precisely what Bermuda did here.  *See* Supp. Mot.  When the government responded on June 16, 2014, to Bermuda's motion, on which no hearing was scheduled, the motion was "under advisement."  The advisement period ended, after 30 days, on July 16.  The court did not refer the matter to me until July 30, and the interim 13 days are non-excludable.  The final reckoning, then, is 119 non-excludable days, well over the STA's 70-day limit.

### C.    Remedy

Because more than 70 non-excludable days have passed since Bermuda's arraignment, his indictment must be dismissed.  *See* § 3162(a)(2).  The STA provides that the court may dismiss either "without prejudice (so the government may proceed again) or with

prejudice (foreclosing new proceedings)." *Scott*, 270 F.3d at 57–58.  The choice is in the court's discretion and guided by at least three factors: (1) the serious of the offense; (2) the circumstances leading to the Act's violation; and (3) the impact that reprosecution of the defendant would have on the administration of justice and of the Act.  § 3162(a)(2); *Scott*, 270 F.3d at 58.  The First Circuit has articulated a fourth factor: "whether the delay resulted in actual prejudice to the defendant," *Barnes*, 159 F.3d at 16,  which is closely correlated with the length of the delay.  *See Hastings*, 847 F.2d at 929.

### 1.        Seriousness of the Offenses

This first factor "centers primarily on society's interest in bringing the particular accused to trial.  The graver the crimes, the greater the insult to societal interests if the charges are dropped, once and for all, without a meaningful determination of guilt or innocence."  *Id.* at 925.   Bermuda stresses that the crimes he is charged with are not as serious as the most serious of crimes encountered by this court, pointing especially to the absence of violence.  This is true, and noted, but certainly not decisive; the First Circuit has rejected an approach that gauges a crime's seriousness relative to other, more serious prosecutions over which a court has presided.  *See United States v. Brown*, 770 F.2d 241, 244 (1st Cir. 1985).  Courts have generally been reluctant to classify felonies, even those not involving violence, as non-serious.  *See United States v. Medugno*, 233 F. Supp. 2d 184, 185 (D. Mass. 2002) (collecting cases).  Nonviolent crimes involving dishonesty or fraud have, in particular, been found to be serious.  *See United States v. Clark*, 577 F.3d 273, 282, 282 n.1 (5th Cir. 2009) (noting that "various courts have classified nonviolent crimes involving mendacity as serious offenses for speedy trial purposes" and collecting cases).

The government would have me consider not only the crimes themselves, but also that they represent a pattern of Bermuda's use of false identities in furtherance of other crimes, including the undoubtedly serious crime of murder.  At the same time, the government paints the charges as, essentially, gateway offenses, urging that Bermuda likely

intended to obtain the passport at issue to facilitate the commission of other, more serious crimes.  Neither Bermuda's criminal history nor his alleged intended future conduct are relevant to this inquiry, which focuses narrowly on the seriousness of the crimes for which Bermuda was indicted.

Those crimes are serious.  While the penalties involved do not by themselves resolve the question of seriousness, they may be instructive.  *See, e.g.*, *Scott*, 270 F.3d at 58; *Brown*, 770 F.2d at 244.  The charge of making a false statement in a passport application carries a maximum sentence of ten years for first-time violators, and the charge of unlawfully disclosing another's social security number a maximum sentence of five years.  These maximum sentences indicate that Congress considered the crimes serious. *See, e.g.*, *United States v. Melguizo*, 824 F.2d 370, 371 (5th Cir. 1987) (finding that charges carrying a combined possible ten-year sentence were serious). This factor therefore militates—though not strongly, given the non-violent nature of the crimes—in favor of dismissal without prejudice

### 2.        Circumstances Leading to the Act's Violation

I now consider "the relative blame each side bears in producing the unexcused delay."  *Barnes*, 159 F.3d at 16.  When the violation is caused by the prosecution or the court, it weighs in favor of dismissal with prejudice; administrative oversight, while less culpable than purposeful misconduct, is no excuse for impermissible delay.  *See United States v. Ramirez*, 973 F.2d 36, 38–39 (1st Cir. 1992); *Hastings*, 847 F.2d at 925.

Here, the blame lies primarily with the government.  While Bermuda delayed the proceedings by moving to continue the trial three times, the continuances he obtained did not substantially contribute to the violation of the Act: they were excluded from the 70-day computation.  Non-excludable days accrued only subsequent to the continuances, apparently as a result of the inattention of the government.  The government contributed directly to ultimately violative delay by failing to meet the deadline for responding to Bermuda's

motion in limine and then, when it did respond, giving notice for the first time of evidentiary arguments that the court was not prepared to consider.  The government's blameworthy conduct, and Bermuda's lack thereof, points toward dismissal with prejudice.

The government contends that Bermuda is impermissibly attempting to gain an "unfair advantage by benefitting from his continuances and then later claiming that he was somehow prejudiced by the district court's actions."  *United States v. Pakala*, 568 F.3d 47, 60 (1st Cir. 2009); *see also United States v. Scantleberry-Frank*, 158 F.3d 612, 614–16 (1st Cir. 1998).  This is not so.  In *Pakala*, the defendant sought continuances and later claimed that the STA had been violated because the court had not made the required "ends of justice" findings on the record.  *See* 568 F.3d at 60.  Similarly, the defendant in *Scantleberry-Frank* argued that a continuance that he requested was improperly granted and non-excludable. Bermuda did not base his motion on the ground that the court failed to properly exclude time that he himself had requested be excluded.  He treats as excludable the full terms of the continuances he requested.  Also inapposite is the case law disallowing a defendant to "lull[] the court and prosecution into a false sense of security" by prospectively waiving his right to a speedy trial and later claiming that waiver to be ineffective.  *United States v. Pringle*, 751 F.2d 419, 434 (1st Cir. 1984).

### 3.       Effect of Reprosecution

This factor militates in favor of dismissal without prejudice.  First, the administration of justice would likely not be unduly hampered by reprosecution, even though, of course, "whenever government—for whatever reasons—falls short of meeting the Act's requirements, the administration of justice is adversely affected."  *Hastings*, 847 F.2d at 926. Here, the adverse effect should be relatively slight.  It appears from the record that the parties finally have before them all necessary discovery materials, and the case is not particularly complex; reprosecution would therefore "probably not take a long time."  *Scott*, 270 F.3d at 58.

Similarly, taking Bermuda's case through the justice system again would not significantly frustrate enforcement of the STA. While dismissal with prejudice would surely have a greater deterrent effect than dismissal without prejudice, "considerations of general deterrence are not dispositive." *Barnes*, 159 F.3d at 17. In any case, "the fact that a retrial might be necessary at all is often deterrence enough." *Id.* at 18. There is no evidence here that the delays in bringing Bermuda to trial were the result of bad faith on the part of the government. Therefore, the more focused deterrence of a dismissal with prejudice is unnecessary.

### 4. Actual Prejudice and Length of Delay

The length of non-excludable delay here is 119 days; I cannot say that such a delay is minimal. But though the length of delay can serve as a useful "proxy for direct proof of actual prejudice," *Hastings*, 847 F.2d at 929, it is not determinative. *See, e.g.*, *Barnes*, 159 F.3d at 18 (declining to find actual prejudice where delay was 191 days). For purposes of this inquiry, the most important kind of prejudice is "loss of witnesses or other impediments to obtaining a fair trial at a later date." *United States v. Dessesaure*, 556 F.3d 83, 86 (1st Cir. 2009). Bermuda focuses on the prejudice he has experienced with respect to his liberty and to his free association with friends and family. This is not to be discounted, *see United States v. Taylor*, 487 U.S. 326, 340–41 (1988), and I do not do so. But Bermuda has made no showing of actual prejudice to his ability to prepare for trial. Despite the lengthy delay, therefore, consideration of this factor favors dismissal without prejudice.

Because three of the four factors so recommend, the proper remedy here is dismissal of Bermuda's indictment without prejudice.

## II. Sixth Amendment

Bermuda's first motion to dismiss was purportedly also premised on a violation of his Sixth Amendment right to a speedy trial. Mot. 2. Save for a single passing reference to the right, however, Bermuda failed to actually make that argument. It is well-settled that "issues

United States v. Bermuda, Criminal No. 13-035 (CCC/BJM)                                     23

adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990).  "Judges are not expected to be mindreaders. Consequently, a litigant has an obligation 'to spell out its arguments squarely and distinctly' or else forever hold its peace." *Rivera-Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988) (citation omitted) (quoting *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990 (1st Cir. 1988)).  I decline, therefore, to address Bermuda's Sixth Amendment claim.

## CONCLUSION

For the foregoing reasons, the motion should be **GRANTED**, and the indictment **DISMISSED WITHOUT PREJUDICE**.

This report and recommendation is filed pursuant to 28 U.S.C. 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court.  Any objections to the same must be specific and must be filed with the Clerk of Court **within fourteen days** of its receipt.  Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review.  *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**
In San Juan, Puerto Rico, this 26th day of August, 2014.

*S/Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge